**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| | * |
| **CAROL J. SHILLING,** | |
| | * |
| **Plaintiff,** | |
| | * |
| **v.** | **Case No.: PWG-16-2696** |
| | * |
| **IRA THOMAS,** *et al.*, | |
| | * |
| **Defendants.** | |
| | * |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

After being exposed to Sporicidin[1] at the school where she worked and subsequently experiencing neurological problems, Carol J. Shilling filed a self-represented products liability suit in federal court in Washington State against the manufacturer, Contec, Inc., and its corporate executive officer, Jack McBride (collectively "Contec"), ECF No. 42-2, and a negligence action against a number of individuals who worked for the school, ECF No. 12. The United States District Court for the Western District of Washington consolidated these cases and transferred the consolidated case to this Court. ECF Nos. 15, 22. Contec has filed a Motion to Dismiss, or in the Alternative, for Summary Judgment and Memorandum in Support, ECF Nos. 42 and 42-1,[2] and Defendants Ira Thomas, Helen Parker, Jeffrey Bishop, Lionel W. Watts, Sean Yarup, and Michael J. Barnes (collectively the "School Defendants") have filed a Motion to Dismiss and a Supplement, ECF Nos. 16 and 41.

---

[1] Sporicidin is a mold remediation product. See Sporicidin Products, http://www.sporicidin.com.

[2] The motions are fully briefed. ECF Nos. 44, 45, 46. No hearing is necessary. *See* Loc. R. 105.6 (D. Md.).

I will dismiss Ms. Shilling's claim against Contec, as she did not properly serve Contec or show good cause for the failure. And, because Plaintiff failed to state a claim in negligence against the School Defendants, I will dismiss that claim with prejudice. Insofar as Plaintiff's opposition to Defendants' motions, which she titled "Joinder and Response to Motions," is also a motion for leave to amend, I will deny her motion because amendment would be futile.

### Background[3]

Ms. Shilling was a teacher at Needwood Academy ("Needwood") in Rockville, Maryland, part of Montgomery County Public Schools ("MCPS"), in October 2012. Compl. 2. After school hours on October 1, 2012, she "began to smell an unusual substance in the air" while working in her classroom. *Id.* at 4. In an adjacent classroom, she discovered Jeffrey Bishop, the mechanical systems technician for MCPS Indoor Air Quality Department, "spraying large amounts of a liquid substance at a high rate from a pressure washer type hose and canister assembly into the running ventilation system." *Id.* "Ms. Shilling asked Mr. Bishop to stop, which he did." *Id.*

Ms. Shilling notified Tonya Fields, the facilities manager, of the incident. *Id.* "Ms. Fields said she would need to file a report and called the principal . . . Mr. Ira Kevin Thomas." *Id.* Ms. Fields and Ms. Shilling went outside, where they discussed the incident with Mr. Thomas, Mr. Bishop, and Lionel Watts, another mechanical systems technician for MCPS Indoor Air Quality Department. *Id.* at 5. Mr. Watts informed Ms. Shilling that the substance was Sporicidin, a disinfecting solution containing phenol. *Id.* According to Ms. Shilling, "[p]roper protocols

---

[3] When considering Defendants' motions to dismiss, I accept the facts alleged in Plaintiff's Complaints, ECF Nos. 12 and 42-2, as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011). She presents the same facts in both Complaints; the citations here are to ECF No. 12.

indicate [that she] should have been disrobed, rinsed of the substance, given new clothing, placed in an ambulance, and sent to the emergency room." *Id.* However, Mr. Thomas simply sent Ms. Shilling home. *Id.*

By the next morning, Ms. Shilling began experiencing "odd sensations in the left side of her face." *Id.* at 6. She noticed the smell in the air when she went to work, and her symptoms increased throughout the day. *Id.* "Ms. Shilling then took the next three days off and went to the doctor, who initially diagnosed Ms. Shilling with Bell's Palsy." *Id.* at 7. Ms. Shilling returned to work, where "the ventilation system was not cleaned nor was her classroom cleaned," such that she "received further chronic exposure daily from her leather chair, her keyboard, and her classroom wood cabinetry, which in its porous state absorbed the Sporicidin." *Id.*

She "continued to feel poorly for the next six months," and she only felt "better when she was away from the building for extended periods of time, such as Thanksgiving and Christmas breaks." *Id.* Her symptoms included "confusion, verbal communication deficits, unusual crying events, angry outbursts, dizziness, vertigo, toe lift issues, [and] Uhthoff phenomenon."[4] *Id.* In mid-February, "an antiquated HVAC mercury system thermometer was broken by facilities employees," and Ms. Shilling speculates that "it is possible that mercury was not cleaned up appropriately and was picked up by the air stream of the HVAC system." *Id.* at 8.

On March 1, 2013, Ms. Shilling went on disability leave because she was "increasingly ill" and "completely unable to manage her students, plan her lessons, and maintain her professional responsibilities." Compl. 9. Her "doctors have stated that her condition is

---

[4] Uhthoff phenomenon is a temporary vision impairment caused by "physical exercise and an increase in body temperature"; it typically is discussed with regard to people with Multiple Sclerosis. J.A. Opara *et al.*, *Uhthoff's phenomenon 125 years later – what do we know today?*, J Med. Life 9(1), Jan.–Mar. 2016, at 101–05, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5152601.

trigeminal neuralgia[5] secondary to exposure to chemicals at her workplace and that recurrent episodes of exposure to environmental toxins resulted in neurological deficits and cognitive dysfunction Not Otherwise Specified (NOS)[][6]." *Id.* at 9.  In addition, "[s]he began developing and demonstrating Pseudobar [sic] Affect (PBA)[7] immediately following the first toxic exposure with inappropriate crying in the workplace." *Id.*

---

[5] "Trigeminal neuralgia (TN), also called tic douloureux, is a chronic pain condition that affects the trigeminal or 5th cranial nerve, one of the most widely distributed nerves in the head. TN is a form of neuropathic pain (pain associated with nerve injury or nerve lesion.)."  Trigeminal Neuralgia Fact Sheet, National Institute of Neurological Disorders and Stroke, https://www.ninds.nih.gov/Disorders/Patient-Caregiver-Education/Fact-Sheets/Trigeminal-Neuralgia-Fact-Sheet.  It typically causes "extreme, sporadic, sudden burning or shock-like facial pain that lasts anywhere from a few seconds to as long as two minutes per episode," with "attacks [that] can occur in quick succession, in volleys lasting as long as two hours," although sometimes instead, or in addition, it causes "constant aching, burning, stabbing pain of somewhat lower intensity." *Id.*

[6] Plaintiff has not explained what "cognitive dysfunction Not Otherwise Specified (NOS)" is. Research suggests that Plaintiff meant either "Cognitive Disorder Not Otherwise Specified (NOS)," or "Cognitive Dysfunction," as I have not found any discussion of ""cognitive dysfunction Not Otherwise Specified (NOS)." Cognitive Dysfunction, which "has been linked to central nervous system imbalances," is characterized by "confusion and forgetfulness, inability to concentrate and recall simple words and numbers, and transposing words and numbers." Cognitive Dysfunction, National Fibromyalgia & Chronic Pain Assoc., http://www.fmcpaware.org/a-c/cognitive-dysfunction.

> Cognitive Disorder NOS as defined in the Mild Neurocognitive Disorder appendix of the DSM-IV-TR is cognitive dysfunction presumed to be due to the direct effect of a general medical condition . . . that does not meet criteria for dementia or delirium, affects at least two cognitive domains, and has a mild impact on functioning (e.g. can be compensated for with additional effort).

Gregory M. Potone, M.D., *et al.*, *Screening for DSM-IV-TR Cognitive Disorder NOS in Parkinson's disease using the Mattis Dementia Rating Scale*, Int'l J. Geriatric Psychiatry 28(4), Apr. 2013, at 364–71, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3449223/.

[7] PseudoBulbar Affect ("PBA") "can occur when certain neurologic diseases or brain injuries damage the areas in the brain that control normal expression of emotion"; as a result, brain signaling is disrupted, "causing a 'short circuit' and triggering involuntary episodes of crying or laughing."  The Science of PBA, http://www.pbainfo.org/science.

Ms. Shilling filed two lawsuits, both *pro se*, in the United States District Court for the Western District of Washington on September 30, 2015, one against the School Defendants (Principal Ira Thomas, Building Services Manager III Helen Parker, Mechanical Systems Tech 2 Jeffrey Bishop, Mechanical Systems Tech 2 Lionell Watts, Team Leader Sean Yarup, and Environmental Abatement Supervisor Michael Barnes), ECF No. 1-1, and one against Contec, ECF No. 42-2.  The District Court for the Western District of Washington dismissed the action against the School Defendants erroneously and then reopened it, ECF Nos. 8–10, entering the Complaint on the docket again on December 21, 2015, ECF No. 12.

The court consolidated the cases, ECF No. 15, and on Defendants' motions, ECF Nos. 16 and 20, found that venue was improper and transferred the consolidated case to this Court.[8]  ECF No. 22.  The School Defendants renewed their motion to dismiss on various grounds, including failure to state a claim, noting that the issue of venue now is moot, *see* Supp. 1 n.1, ECF No. 41, and Contec moved to dismiss or alternatively for summary judgment on grounds including insufficient service of process.

### Insufficient Service of Process

A defendant may assert insufficient service of process as a basis for dismissal.  Fed. R. Civ. P. 12(b)(5).  "If service is contested, the 'plaintiff bears the burden of establishing the validity . . . pursuant to Rule 4.'"  *Shlikas v. SLM Corp.,* No. WDQ–09–2806, 2011 WL

---

[8] Plaintiff alleges that she now suffers from mental incapacities due to her injury, claiming that "any kind of analytical activity causes problem with [her] neurology [sic] and cognitive processes."  Compl. 12.  "While Federal Rule of Civil Procedure 17(c)(2) allows the court to appoint a guardian ad litem [to protect the interest of an incompetent litigant], it does not compel it to do so, but rather grants it considerable discretion to issue an 'appropriate order.'"  *Amato v. Dorchester Cty. Det. Ctr.,* No. RWT-13-999, 2014 WL 1276192, at *1 (D. Md. Mar. 26, 2014).  Because Plaintiff has the "apparent ability to fully articulate [her] case" and given that this case will not progress beyond this stage, Rule 17(c)(2) does not require the appointment of a guardian for her to purse her claims.  *See id.*

2118843, at *2 (D. Md. May 25, 2011) (quoting *O'Meara v. Waters,* 464 F. Supp. 2d 474, 476 (D. Md. 2006)).

Rule 4 of the Federal Rules of Civil Procedure provides that an individual in the United States may be served by "following state law for serving a summons . . . in the state where the district court is located or where service is made," or by personally delivering the summons and complaint to the individual, leaving them at the individual's home with another resident of suitable age and discretion, or delivering them to an agent authorized to accept service. Fed. R. Civ. P. 4(e)(1), (2). At the time Ms. Shilling attempted to serve Contec, Inc. and McBride, this case was before the United States District Court for the Western District of Washington, and Ms. Shilling attempted to serve them in South Carolina. Therefore, Ms. Shilling could have effected service pursuant to Fed. R. Civ. P. 4(e)(2) or Washington's or South Carolina's laws for service of process. *See* Fed. R. Civ. P. 4(e)(1).

Ms. Shilling attempted to serve Contec, Inc. and McBride by mailing a copy of the complaint and summons to McBride at the company's "general mailing post office box in South Carolina" via certified mail. McBride Aff. ¶ 3, Ex. 3, ECF No. 42-4. In doing so, she did not personally deliver the documents to either defendant, leave them at McBride's home, or deliver them to an agent of either defendant. Thus, she did not properly effect service pursuant to Fed. R. Civ. P. 4(e)(2)(A), (B), or (C).

Similarly, under Washington law, a plaintiff can serve an individual defendant "by delivering a copy" of the summons "to the defendant personally, or by leaving a copy of the summons at the house of his or her usual abode with some person of suitable age and discretion then resident therein." Wash. Rev. Code Ann. § 4.28.080(16). Additionally, if an individual "cannot with reasonable diligence be served as described" in § 4.28.080(16),

the summons may be served as [follows], and shall be deemed complete on the tenth day after the required mailing: By leaving a copy at his or her usual mailing address with a person of suitable age and discretion who is a resident, proprietor, or agent thereof, and by thereafter mailing a copy by first-class mail, postage prepaid, to the person to be served at his or her usual mailing address. For the purposes of this subsection, "usual mailing address" does not include a United States postal service post office box or the person's place of employment.

*Id.* § 4.28.080(17).  A corporation such as Contec, Inc. is served "by delivering a copy" of the summons "to the president or other head of the company or corporation, the registered agent, secretary, cashier or managing agent thereof or to the secretary, stenographer or office assistant of the president or other head of the company or corporation, registered agent, secretary, cashier or managing agent."  *Id.* § 4.28.080(9).  "Th[ese] method[s] also appl[y] when the person to be served resides outside the state." *Long v. Hartman*, 96 Wash. App. 1042 (1999) (citing Wash. Rev. Code Ann. § 4.28.180 ("Personal service of summons or other process may be made upon any party outside the state.")).  But, "personal service outside the state shall be valid only when an affidavit is made and filed to the effect that service cannot be made within the state." *Id.* § 4.28.185(4).

As noted, Ms. Shilling attempted to serve Contec, Inc. and McBride by mailing a copy of the complaint and summons to McBride at the company's "general mailing post office box in South Carolina."  McBride Aff. ¶ 3.  This mailing does not constitute personal service on the corporate or individual defendant pursuant to Wash. Rev. Code Ann. § 4.28.080(9) or (16), because the complaint and summons were mailed, not delivered.  Nor does it satisfy the requirements of Wash. Rev. Code Ann. § 4.28.080(17), as a copy was not left at McBride's "usual mailing address" before mailing a copy. Moreover, Contec, Inc.'s "post office box" cannot qualify as McBride's "usual mailing address" because Contec, Inc. is McBride's "place of employment," and neither a "place of employment" nor a "United States postal service post office box" qualifies as a "usual mailing address." *Id.* § 4.28.080(17).  Further, Ms. Shilling did

not file an affidavit with the Washington court asserting that she could not serve Contec, Inc. or

McBride within Washington.  As such, attempted service upon Contec, Inc. and McBride by

mail outside of Washington was insufficient under Washington law.

South Carolina's Rules of Civil Procedure have similar provisions for personal delivery.

A plaintiff can serve an individual defendant

> by delivering a copy of the summons and complaint to him personally or by
> leaving copies thereof at his dwelling house or usual place of abode with some
> person of suitable age and discretion then residing therein, or by delivering a copy
> to an agent authorized by appointment or by law to receive service of process.

S.C. R. Civ. P. 4(d)(1).  And, a plaintiff can serve a corporation such as Contec, Inc.

> by delivering a copy of the summons and complaint to an officer, a managing or
> general agent, or to any other agent authorized by appointment or by law to
> receive service of process and if the agent is one authorized by statute to receive
> service and the statute so requires, by also mailing a copy to the defendant.

S.C. R. Civ. P. 4(d)(3).  As discussed with regard to Washington's personal delivery provisions,

Ms. Shilling did not comply with any of the provisions because the complaint and summons

reached McBride (as an individual and as Contec, Inc.'s agent) by mail, not by delivery to

McBride, another resident of his home, or an agent of his or the corporate defendant.  *See* S.C. R.

Civ. P. 4(d)(1), (3).

Unlike Washington, South Carolina permits service by certified mail.  Specifically, an

individual or corporate defendant may be served with the summons and complaint "by the

plaintiff or by any person authorized to serve process pursuant to Rule 4(c), . . . by registered or

certified mail, return receipt requested and delivery restricted to the addressee."  S.C. R. Civ. P.

4(d)(8).  Although Plaintiff used certified mail, *see* McBride Aff. Ex. A, she did not request a

return receipt or restrict delivery to the addressee.  As such, service on Contec, Inc. and McBride

was insufficient under South Carolina law as well.  S.C. R. Civ. P. 4(d)(8).

Ms. Shilling does not attempt to carry her burden of showing that she effected proper service on either Contec, Inc. or McBride. *See Shlikas*, 2011 WL 2118843, at *2; *O'Meara*, 464 F. Supp. 2d at 476.   Rather, she asks the Court to "forgive[] . . . any failure to serve the defendants, Jack McBride, and Contec correctly," and to allow the case to proceed as "defendants . . . have been informed of the action, which is the spirit of the law – that a defendant knows that an action has been brought against them."  Pl.'s Joinder & Resp. 7.

Because Ms. Shilling did not show that she effected proper service and the time for serving Defendants has passed, Rule 4(m) governs the disposition of the case.   When Ms. Shilling filed suit, which was prior to December 1, 2015, Rule 4(m) provided:

> If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m) (amended Dec. 1, 2015 to reduce the period from 120 days).  Here, Contec moved to dismiss for insufficient service, and Plaintiff has responded.

"Good cause generally requires the Plaintiff to demonstrate that she exercised 'reasonable diligence in trying to effect service.'"  *Gbane v. Capital One, NA*, No. PX-16-701, 2016 WL 3541281, at *1 (D. Md. June 29, 2016) (quoting *Jones v. Sears and Roebuck*, No. DKC-15-3092, 2016 WL 1696557, at *2 (D. Md. Apr. 28, 2016)).  Thus, the Court may find good cause "where the plaintiff has 'taken some affirmative action to effectuate service of process upon the defendant or ha[s] been prohibited, through no fault of his own, from taking such an affirmative action.'"  *Tenenbaum v. PNC Bank Nat'l Ass'n*, No. DKC-10-2215, 2011 WL 2038550, at *4 (D. Md. May 24, 2011) (quoting *Vincent v. Reynolds Mem'l Hosp., Inc.*, 141 F.R.D. 436, 437 (N.D. W. Va. 1992)).  Nevertheless, "the 'good cause' standard is a stringent one where claims of delay from personal tragedy or illness do not suffice."  *Gbane*, 2016 WL 3541281, at *1 (noting that in

*Braithwaite v. Johns Hopkins Hosp.*, 160 F.R.D. 75, 78 (D. Md. 2005), this Court held that "murder of *pro se* plaintiff's daughter [was] not 'good cause,'" and in *Knott v. Atl. Bingo Supply Inc.*, No. JFM-05-1747, 2005 WL 3593743, at *1–2 (D. Md. Dec. 22, 2005), the "serious illness of plaintiff's counsel was not good cause"). And, "[p]ro se status . . . is insufficient to establish good cause, even where the pro se plaintiff mistakenly believes that service was made properly." *Chen v. Mayor & City Council of Baltimore*, 292 F.R.D. 288, 293–94 (D. Md.) (quoting *Hansan v. Fairfax Cnty. Sch. Bd.,* 405 F. App'x 793, 794 (4th Cir. 2010)), *aff'd*, 546 F. App'x 187 (4th Cir. 2013); *see Tann v. Fisher*, 276 F.R.D. 190, 193 (D. Md.) (same), *aff'd*, 458 F. App'x 268 (4th Cir. 2011).

Here, Ms. Shilling argues that the case should continue as to Contec because Contec has not "show[n] that its defense has been prejudiced by lack of required motion," erroneously relying on the Local Government Tort Claims Act's notice provisions. *See* Pl.'s Joinder & Resp. 7. Plaintiff contends generally that she "is working very hard on this matter, despite her disability, and despite the discomfort it causes her to do the legal work," and that "simple tasks can be quite confusing . . . and thus take longer, and may go incomplete, though attempted." *Id.* at 4. Her medical conditions, while unfortunate and undoubtedly frustrating for Ms. Shilling, do not amount to good cause. *See Gbane*, 2016 WL 3541281, at *1; *Knott*, 2005 WL 3593743, at *1–2. Nor does her *pro se* status. *See Hansan*, 405 F. App'x at 794; *Chen*, 292 F.R.D. at 293–94; *Tann*, 276 F.R.D. at 193. Further, Ms. Shilling does not explain why she did not comply with the notice requirements, and she does not seek leave to effect proper service at this time. Moreover, the fact that Plaintiff was able to mail the summons and complaint via certified mail to Contec undermines any showing of good cause, given that service in South Carolina can be sufficient by certified mail if the plaintiff also requests a return receipt and restricts delivery to

the addressee.  S.C. R. Civ. P. 4(d)(8).  Ms. Shilling does not provide any justification for her failure to comply with South Carolina's service rule.  Accordingly, because Plaintiff has failed to show good cause, Contec's motion to dismiss is granted without prejudice.[9]

### Failure to State a Claim

The School Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing, *inter alia*, that Ms. Shilling fails to state a claim in negligence.  Sch. Defs.' Mot. 7.  Under Rule 12(b)(6), Ms. Shilling's Complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).

Plaintiff is proceeding *pro se*, and her Complaint is to be construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, liberal construction does not absolve Plaintiff

---

[9] Although dismissal is without prejudice, I note that the statute of limitations bars Ms. Shilling from filing another products liability action against Contec based on her exposure to Sporicidin. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101; *Jeffries v. Boston Scientific Corp.*, No. RWT-15-3480, 2016 WL 4205771, at *4 (D. Md. Aug. 10, 2016).  Because service clearly was insufficient in this case, I need not address any of Contec's other arguments in support of the motion to dismiss.

from pleading plausible claims. *See Holsey v. Collins*, 90 F.R.D. 122, 128 (D. Md. 1981) (citing *Inmates v. Owens*, 561 F.2d 560, 562–63 (4th Cir. 1977)).

To state a claim for negligence, Plaintiff must allege "(a) a duty owed by the defendant[s] to the plaintiff, (b) a breach of that duty, and (c) injury proximately resulting from that breach." *Barclay v. Briscoe*, 47 A.3d 560, 574 (Md. 2012). She claims that the School Defendants had a "responsibility to inform staff, students, parents, and any other persons within the building of the Sporicidin spraying activities."   Compl. 3.   She alleges that the breach caused the medical conditions from which she now suffers.

The fault in Ms. Shilling's argument is that there is no generalized universal duty to exercise reasonable care. *See Premium of Am., LLC v. Sanchez*, 73 A.3d 343, 354 (Md. Ct. Spec. App. 2013). Rather, tort liability exists only where "the law will give recognition and effect" to "an obligation … to conform to a particular standard of conduct toward another." *Id.* (quoting *Gourdine v. Crews*, 955 A.2d 769 (Md. 2008) (citation omitted)). Significantly, "absent that duty, there can be no negligence." *Id.* (quoting *Barclay v. Briscoe*, 47 A.3d 560, 574 (Md. 2012) (citation omitted)). Therefore, "'when analyzing a negligence action it is customary to begin with whether a legally cognizable duty exists." *Id.* (quoting *Pendleton v. State*, 921 A.2d 196, 204 (Md. 2007)).

Certainly, an employer such as the Montgomery County Board of Education has a duty to provide a safe workplace for its employees, such as Shilling.   *See Athas v. Hill*, 476 A.2d 710, 711 (Md. 1984).   The exclusive remedy for breach of that duty, however, is through the Workers' Compensation Act, *id.* at 713; *Hastings v. Mechalske*, 650 A.2d 274, 279 (Md. 1994), a route that Shilling already pursued without success.   Moreover, because this is a non-delegable duty, employees working in a supervisory capacity "may be subject to liability only for

negligently breaching a duty of case which they personally owe to the employee." *Athas*, 476 A.2d at 711; *see also Hastings*, 650 A.2d at 279 (noting that "a supervisory coemployee performing a nondelegable duty of the employer—such as providing a safe place to work—does not thereby assume a personal duty toward his or her fellow employees"). Thus, a supervisory co-employee may be liable only if he or she "commits an affirmative, direct act of negligence toward an employee, and therefore negligently breaches a personal duty of care which is reasonably owed by him to the fellow employee." *Athas*, 476 A.2d at 718; *see also Hastings*, 650 A.2d at 279.

Shilling's Complaint and proposed amendments make it clear that only one School Defendant played an active role in allegedly compromising the safety of her workplace: Bishop, the employee who sprayed the Sporicidin. Shilling does not claim that Principal Ira Thomas, Building Services Manager III Helen Parker, Team Leader Sean Yarup, or Environmental Abatement Supervisor Michael Barnes "commit[ed] an affirmative, direct act of negligence toward [Shilling]." *See Athas*, 476 A.2d at 718. Rather, each acted only in a supervisory capacity. Therefore, they cannot be personally liable. *See id.*; *Hastings*, 650 A.2d at 279.

Bishop and Watts, mechanical systems technicians, were not supervisors. And, while the Workers' Compensation Act "excludes an action in tort by an employee against his employer," it "does not exclude tort actions between co-employees." *Athas v. Hill*, 458 A.2d 859, 865 (Md. Ct. Spec. App. 1983) (quoting *Hutzell v. Boyer*, 249 A.2d 449 (Md. 1969)), *aff'd*, 476 A.2d 710 (1984). Indeed, "an employee, 'suffering a compensable injury because of the negligence of a fellow employee, [may] bring a personal injury action against that co-employee.'" *Id.* (quoting *Hauch v. Connor*, 453 A.2d 1207, 1208 (Md. 1983)). Therefore, if either Bishop or Watts owed Shilling an independent duty of care and breached that duty, he could be liable to Shilling in

negligence.  *E.g.*, *Hayes v. Pratchett*, 45 A.3d 861 (Md. Ct. Spec. App. 2012) (concluding that supervisor "as the driver of a motor vehicle, . . . owe[d] a personal duty of care to all other travelers, including [plaintiff]," and summary judgment in his favor was in error because "[a] supervisory employee's affirmative act of negligence goes beyond the scope of the nondelegable duty of the employer to 'provide his employees with a safe place to work, *i.e.* safe conditions'").

Nonetheless, the employer's duty to provide a safe environment does not extend to Bishop and Watts individually.  *See Athas*, 476 A.2d at 718 (stating that "the ultimate responsibility of performing nondelegable duties remains with the employer").  And, despite filing a detailed complaint and a request to amend accompanied by two exhibits to clarify what causes of action she brings and against whom she brings them, Shilling still fails to identify any independent duty that Bishop or Watts owed her.  Moreover, as to Watts, Shilling alleges specifically that Watts discussed Sporicidin with her, not that he played an active role in spraying it.  Consequently, not only has she failed to identify a duty that he owed her, she also fails to allege that he acted in breach of that duty.  Additionally, regarding Bishop, she claims that he stopped spraying as soon as she asked him to stop, and she does not allege that, before she approached him, he had any reason to know that a teacher was still in the building after school hours, when he was spraying.  In sum, Ms. Shilling's negligence claim against the School Defendants cannot survive Defendants' motion because she does not allege any "legally cognizable duty" that they owed to her. *See Pendleton*, 921 A.2d at 204; *Barclay*, 47 A.3d at 574.  Consequently, it is subject to dismissal.  *See* Fed. R. Civ. P. 12(b)(6); *Pendleton*, 921 A.2d at 204; *Barclay*, 47 A.3d at 574.

## Leave to Amend

In Plaintiff's "Joinder and Response to Motions," she attempts to bring several new claims and additional defendants.  Though a response to a motion to dismiss is not a vehicle to amend, *see Dyer v. Oracle Corp.*, No. PWG-16-521, 2016 WL 7048943, at *7 (D. Md. Dec. 5, 2016), I will construe Plaintiff's request as a motion for leave to amend.  *See* Fed. R. Civ. P. 1. When more than twenty-one days have passed since a defendant filed a motion to dismiss, as is the case here, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2). Whether to grant a motion for leave to amend is within this Court's discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).

The Court only should deny leave to amend if amendment "would prejudice the opposing party, reward bad faith on the part of the moving party, or . . . amount to futility." *MTB Servs., Inc. v. Tuckman-Barbee Constr. Co.*, No. RDB-12-2109, 2013 WL 1819944, at *3 (D. Md. Apr. 30, 2013); *see Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." *Patterson v. Con Med*, No. JFM-15-3303, 2016 WL 1718226, at *4 (D. Md. Apr. 28, 2016) (citing *Katyle v. Perm Nat'l Gaming, Inc.* 637 F.3d 462, 471 (4th Cir. 2011)), *aff'd*, No. 16-6663, 2016 WL 5753089 (4th Cir. Oct. 4, 2016).  Put another way, a proposed amendment is futile if it "would not survive a motion to dismiss."  *Rawlings v. City of Baltimore*, No. BEL-10-2077, 2011 WL 1375603, at *4 (D. Md. April 12, 2011).

In her motion to amend, Ms. Shilling asserts that this case

is a very complex, webbed case involving a tremendous number of civil injuries to Carol Shilling under a complex set of Federal, State, and Local Employment, Environmental, and Civil Rights Statutes, including the Racketeer Influenced and Corrupt Organizations Act (RICO), Americans with Disabilities Act (ADA), The

> Civil Rights Act, Maryland Workmen's Compensation Law, Maryland State
> Education Statutes, Peer Review System Statutes, Elementary and Secondary
> Education Act (ESEA),and the No Child Left Behind (NCLB) Act. The claims
> include claims of Negligence, Workmen's Compensation Insurance Fraud,
> Accidental Disability Retirement Fraud, Sick Leave Bank Fraud, Negligent
> Supervision of Coworkers, Intentional Infliction of Emotional Distress, Disability
> Discrimination, Outrageous Conduct, Libel, Defamation, Deliberate Indifference
> to Serious Medical Needs, Creating a Hostile Work Environment, Breach of
> Contract, Retaliatory Discharge, Civil Conspiracy, Peer Review System Fraud,
> Interference with Contractual Relations, Environmental Impact Analysis Fraud,
> and Environmental Accident Reporting Fraud, each of these defendant individuals
> acting in the capacity of the alter ego of the employer, the MCBOE.

Pl.'s Joinder & Resp. 1.   She alleges that "[t]here was a general hostile work environment evident from day one of Ms. Shilling's employment in August, 2012 . . . ."  *Id.* at 2.  She also complains that she "has not received any workmen's compensation payments" or her "rightfully due accidental disability retirement benefits."  *Id.* at 6.  She does not add any factual allegations to her original negligence claim.  Thus, the negligence claim against the School Defendants still would fail to state a claim, and therefore, amendment would be futile.  *See Patterson*, 2016 WL 1718226, at *4; *Rawlings*, 2011 WL 1375603, at *4; *Jassie v. Mariner*, No. DKC-15-1682, 2016 WL 3218725, at *4 (D. Md. June 10, 2016), *appeal dismissed*, No. 16-2006, 2016 WL 6833371 (4th Cir. Nov. 21, 2016) (denying *pro se* plaintiff's motion for leave to amend, where the amended "allegations fail to state a plausible claim for relief and cannot withstand Rule 12(b)(6) review"); *Gray v. Bagley*, No. JFM-11-1117, 2011 WL 8227134, at *1 (D. Md. July 28, 2011) (denying motion for leave to amend where "plaintiff's reasoning is disjointed and… [states] no cognizable claims"); *Forquer v. Schlee*, No. RDB-12-969, 2012 WL 6087491, at *4 (D. Md. Dec. 4, 2012) (denying request for leave to amend where "[p]laintiff's amended complaint [did] not cure" deficiencies in claims).

Ms. Shilling seeks to bring the additional claims against the School Defendants as well as the following individuals who worked at the Blair G. Ewing Building where she worked at

Needwood Academy: Jackie E. Butt, Senior Special Leave Administrator & Workmen's Compensation Principal; Tonya Fields, Building Service Assistant Manager II Shift 2; Emmanuel Fisher, Supervisor; Melanie Humphries, Academy Administrator; Todd Malkoff, Science Resource; and Laura Shabazz, Central Office Teacher.   Pl.'s Joinder & Resp. 11–13. She also seeks to bring claims against Joshua Starr, Superintendent; Timothy Maple, Department of Health and Human Services; the National Education Association; the Maryland State Education Association; the Maryland State Retirement Agency and its employees Christine Hostetter and Mary Neal; and the following individuals from the Montgomery County Education Association: Betsy Johnson, Treasurer; Chris Lloyd, President; Doug Prouty, Second Vice President; Sonya Addison-Dove, Receptionist; Jennifer Martin, Vice-President; and Lauren Moskowitz, Secretary.   *Id.* at 14, 17–18.   Plaintiff asks the Court to "order the National Department of Education to conduct a study to determine the breath [sic] of … illegal conduct in our schools."  *Id.* at 3.

To recap, the underlying spraying incident that allegedly caused Ms. Shilling's harm occurred on October 1, 2012.  She filed suit in September 2015.  Now, in the Joinder and Response she filed on October 6, 2016, more than four years after the incident and more than a year after the inception of this litigation, Plaintiff proposes a new round of pleading even less plausible claims against people even more remotely involved (if at all) in the October 2012 incident than the original Defendants.  Ms. Shilling has not identified any legally cognizable duty owed by the proposed additional defendants, and therefore amending her negligence claim to add these defendants would be futile.  *See Patterson*, 2016 WL 1718226, at *4; *Rawlings*, 2011 WL 1375603, at *4.

17

Nor has she shown, for the most part, any relation between her new claims, largely stemming from the hostility and corruption she perceived in her workplace, and her original claim of tort injury. "An amended pleading may relate back to the date of the original pleading if 'the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.'" *Gray v. Unidentified Metro Transit Police Officers 1, 2, 3*, No. DKC 14-2939, 2017 WL 528429, at *5 (D. Md. Feb. 9, 2017) (quoting Fed. R. Civ. P. 15(c)(1)(B)). The corruption and hostility Plaintiff now describes as being "evident from day one of Ms. Shilling's employment in August, 2012," Pl.'s Joinder & Resp. 2, generally involves "entirely distinct occurrence[s]" from the October 2012 spraying of Sporicidin, and therefore "relation back is not appropriate here." *See Gray*, 2017 WL 528429, at *5; Fed. R. Civ. P. 15(c)(1)(B). Consequently, Maryland's three year statute of limitations bars Plaintiff's proposed amendments, *see* Md. Code Ann., Cts. & Jud. Proc. 5-101, and amendment would be futile. *See Patterson*, 2016 WL 1718226, at *4; *Rawlings*, 2011 WL 1375603, at *4.

As for Plaintiff's proposed claims based on the denial of disability benefits by state agencies, as well as her Americans with Disabilities Act ("ADA") claims based on these denials of benefits and for a hostile work environment, Pl.'s Joinder & Resp. 1, 2–3, 16, they do relate back to the same incident, given that she claims that the Sporicidin exposure caused her alleged disability. The elements of an ADA retaliation claim are "(1) [plaintiff] engaged in protected conduct, (2) he [or she] suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012). Yet, "[t]he ADA's retaliation provision only prohibits retaliation against a person because the person . . . 'made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under [the ADA],'" and "[a]s the Fourth Circuit noted in

*Reynolds*, '[f]iling a workers' compensation claim is not something that is covered by the ADA[,] but rather by retaliation provisions under state law.'" *Jeffries v. Wal-Mart Stores E.*, No. GJH-15-473, 2016 WL 3771241, at *4 (D. Md. July 11, 2016) (quoting *Reynolds,* 701 F.3d at 154 (citing 42 U.S.C. § 12203(a)), *aff'd*, No. 16-1900, 2016 WL 6068865 (4th Cir. Oct. 17, 2016). Thus, "[r]emedy for those [denial of benefits] claims must be pursued before the proper Maryland state agencies and state courts," and such claims would be subject to dismissal in this Court. *See Jeffries v. Wal-Mart Stores E., LP*, No. GJH-15-473, 2016 WL 430479, at *4 (D. Md. Feb. 3, 2016). Therefore, amendment would be futile. *See Patterson*, 2016 WL 1718226, at *4; *Rawlings*, 2011 WL 1375603, at *4.

To state a claim for a hostile work environment claim under the ADA, a plaintiff must allege that

> (1) [she] is a qualified individual with a disability; (2) [s]he was subjected to unwelcome harassment; (3) the harassment was based on [her] disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer.

*Fox v. Gen. Motors Corp.,* 247 F.3d 169, 177 (4th Cir. 2001); *see Wilson v. City of Gaithersburg*, 121 F. Supp. 3d 478, 483 (D. Md. 2015) (quoting *Fox*). Ms. Shilling alleges that she "became disabled while working at the Blair G. Ewing Building and became a target of abuse by administrative staff and students" when "[s]taff encouraged student outbursts and encouraged student efforts to cause Ms. Shilling to finally leave on disability." Pl.'s Joinder & Resp. 2–3. I will assume without deciding that one or more of her alleged disabilities were qualifying disabilities, that the harassment she allegedly experienced was because of one or more of her disabilities, and that the harassment can be imputed to her employer. Yet, despite filing a 21-page Joinder and Response, accompanied by a cover letter and two exhibits totaling fourteen pages to clarify the claims she seeks to bring, Ms. Shilling has not alleged that the hostile work

environment she perceived was "sufficiently severe or pervasive to alter a term, condition, or privilege of employment." *See Fox*, 247 F.3d at 177. Although she claims that she had "to finally leave," she asserts that she left "*on disability*," not that she was constructively discharged through the harassment. Pl.'s Joinder & Resp. 2–3 (emphasis added).

Consequently, even having filed a lengthy joinder motion and two exhibits to describe her claims, Plaintiff has not made factual allegations sufficient to sustain an ADA claim. Therefore, it is clear that any amendment would be futile. *See Patterson*, 2016 WL 1718226, at *4; *Rawlings*, 2011 WL 1375603, at *4; *Jassie*, 2016 WL 3218725, at *4; *Gray*, 2011 WL 8227134, at *1; *Forquer*, 2012 WL 6087491, at *4.

As for her claims against Contec, she seeks to "separate Jack McBride and Contec from the Thomas et al[.] suit, and bring [an] Injunctive action to temporarily prevent the manufacture, marketing, and sale of Sporicidin, and any products containing phenol, until the Environmental Protection Agency is able to complete the research that they listed as unmet data needs for phenol." Pl.'s Joinder & Resp. 7. Ms. Shilling also requests that the Court "force recognition by the National Institutes [sic] of Health and any other reporting agencies, of the neurological disorder caused by the exposure to phenol in Sporicidin." *Id.* at 4. She asks the Court to "order the National Institutes of Health or the appropriate U.S. governing agency to 1. develop a case study of Ms. Shilling's exposure, 2. determine nationally if others have been exposed, and 3. determine their response to the toxin." *Id.* Similarly, she asks the Court to "order the Environmental Protection Agency to complete the tasks on the data needs for phenol" and to "order the Food and Drug Administration to temporarily suspend the products [sic] license until the research needs are met" and to take any other necessary action "to prevent the future harm of

another individual or pet by this product until such time as we are positive it does not cause Alzheimer's or Multiple Sclerosis Mimic disorders." *Id.* at 7.

Because Ms. Shilling failed to effect proper service of process on Contec, amendment of her products liability claim against Contec would be futile, given that the statute of limitations has run. *See* Cts. & Jud. Proc. § 5-101; *Jeffries v. Boston Scientific Corp.*, No. RWT-15-3480, 2016 WL 4205771, at *4 (D. Md. Aug. 10, 2016). Moreover, insofar as she asks this Court to order agency action, it appears that she seeks a writ of mandamus, which is a court order "to compel performance of a particular act by . . . a governmental . . . body." *Shipkovitz v. Dovenmuehle Mortg., Inc.*, No. PX-16-0712, 2016 WL 6803771, at *3 (D. Md. Nov. 17, 2016) (quoting Black's Law Dictionary (10th ed. 2014)).

> [M]andamus is a "drastic" remedy, which is "reserved for extraordinary situations" in which the petitioner "has no other adequate means to attain the relief he desires." *United States ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 502, 511 (4th Cir. 1999) (quoting *Kerr v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 426 U.S. 394, 402–03 (1976)) (internal quotation marks omitted). …
> Importantly, "mandamus cannot be used to compel the performance of discretionary duties of federal government officers; mandamus will lie only to compel ministerial acts." [*Asare v. Ferro*, 999 F. Supp. 657, 659 (D. Md. 1998).] A government official's duty is "ministerial" if "the law prescribes and defines a duty to be performed with such precision as to leave nothing to the exercise of discretion or judgment." *Id.* at n.6.

*Shipkovitz*, 2016 WL 6803771, at *3 (some citations omitted).

Neither recognizing a disorder, developing a case study, investigating exposure and reactions to a purported toxin, gathering data on a specific subject, nor suspending a product license is a ministerial act that requires no discretion or judgment. *See id.* Therefore, mandamus would not be appropriate. *See id.* Thus, amending the pleading to seek a writ of mandamus would be futile. *See Patterson*, 2016 WL 1718226, at *4; *Rawlings*, 2011 WL 1375603, at *4. I

will deny her request to amend her claims against Contec.  *See Patterson*, 2016 WL 1718226, at *4; *MTB Servs., Inc.*, 2013 WL 1819944, at *3.

## **Conclusion**

For the foregoing reasons, the School Defendants' motion to dismiss, ECF Nos. 16 and 41, will be granted with prejudice, and Contec's Motion to Dismiss, ECF No. 42, will be granted without prejudice.  In addition, Plaintiff's motion for leave to amend, ECF No. 44, will be denied.

A separate order will issue.


Date: <u>March 16, 2017</u>                                 _____/S/_____
                                                                        Paul W. Grimm
                                                                        United States District Judge